PD-0035-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/12/2015 4:02:02 PM
Accepted 2/13/2015 9:18:45 AM
ABEL ACOSTA
CLERK

No. PD-0035-15

## In the Court of Criminal Appeals

DANIEL DIAZ, APPELLANT

VERSUS

THE STATE OF TEXAS, APPELLEE

ON APPEAL FROM THE 253RD JUDICIAL DISTRICT COURT
LIBERTY COUNTY, TEXAS
TRIAL COURT CAUSE NO. 1259853
AND
THE COURT OF APPEALS FOR THE NINTH JUDICIAL DISTRICT OF TEXAS
BEAUMONT, TEXAS
NO. 09-13-00104-CR

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

February 13, 2015

ABEL ACOSTA, CLERK

WENDELL A. ODOM JR.
TEXAS BAR # 15208500
440 LOUISIANA ST., STE 200
HOUSTON, TEXAS 77002
(713) 223-5575
(713) 224-2815 [FAX]

ATTORNEY FOR APPELLANT
DANIEL DIAZ

[ORAL ARGUMENT REQUESTED]

## IDENTITIES OF PARTIES AND COUNSEL

**Daniel Diaz**                                             Appellant

**State of Texas**                                          Appellee

**Honorable Susan Baker**                                  Trial Court Judge
PO Box 3937                                                253rd District Court
Galveston, Texas 77552                                     Liberty County, TX

**Wendell A. Odom, Jr.**                                   Appellate Counsel
440 Louisiana St., Ste 200                                 for PDR
Houston, Texas 77002

**Richard Burroughs**                                      Appellate Counsel
P.O. Box 1676                                              in Court of Appeals
Cleveland, Texas 77328

**Paul Aman**                                              Trial Counsel
712 Westcott St.
Houston, Texas 77007

**Logan Pickett**                                          District Attorney
1923 Sam Houston, Ste 112                                  on Appeal
Liberty, Texas 77575

**Anne Streit**                                            Assistant District
1923 Sam Houston, Ste 112                                  Attorney at Trial
Liberty, Texas 77575

# TABLE OF CONTENTS

|   |   | PAGE |
|---|---|---|
| IDENTITIES OF PARTIES, COUNSELS AND JUDGE | | i |
| TABLE OF CONTENTS | | ii |
| INDEX OF AUTHORITIES | | iii |
| STATEMENT REGARDING ORAL ARGUMENT | | 1 |
| STATEMENT OF THE CASE | | 2 |
| STATEMENT OF PROCEDURAL HISTORY | | 2 |
| STATEMENT OF FACTS | | 3 |
| GROUNDS FOR REVIEW | | 5 |
| I. | ISSUE I – DID THE COURT OF APPEALS RULE INCORRECTLY WHEN THEY FOUND THAT THE EVIDENCE WAS SUFFICIENT TO SUSTAIN THE CONVICTION? | |
| II. | ISSUE II – DID THE COURT OF APPEALS RULE INCORRECTLY WHEN THEY FOUND THAT MR. DIAZ WAS PROVIDED EFFECTIVE REPRESENTATION UNDER *STRICKLAND* AND THE 6TH AMENDMENT TO THE UNITED STATES CONSTITUTION? | |
| ARGUMENT AND AUTHORITIES | | 5 |
| I. | ISSUE I | 5 |
|   | A. HYPOTHETICALLY CORRECT JURY CHARGE | 6 |
|   | B. ARGUMENT | 7 |
| II. | ISSUE II | 10 |
|   | A. DEFICIENT PERFORMANCE | 11 |
|   | B. HARM RESULTED FROM DEFICIENCY | 13 |
| PRAYER FOR RELIEF | | 14 |
| CERTIFICATE OF SERVICE | | 15 |

# INDEX OF AUTHORITIES

## CASES

*Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010) ........................................................5

*Clayton v. State,* 235 S.W.3d 772 (Tex. Crim. App. 2007) ........................................................6

*Curry v. State,* 30 S.W.3d 394 (Tex. Crim. App. 2000) ........................................................6

*Ex Parte LaHood,* 401 S.W.3d 45 (Tex. Crim. App. 2013) ........................................................11

*Fuller v. State,* 73 S.W.3d 250 (Tex. Crim. App. 2002) ........................................................6

*Garcia v. State,* 827 S.W.2d 937 (Tex. Crim. App. 1992) ........................................................7

*Gollihar v. State,* 46 S.W.3d 243 (Tex. Crim. App. 2001) ........................................................6

*Horton v. State,* 4187 LEXIS 1 (Tex. App.—Houston[14th Dist.] 2010) ........................................................7

*Jackson v. Virginia,* 443 U.S. 307 (1979) ........................................................5, 6, 8

*Johnson v. State,* 912 S.W.3d 227 (Tex. Crim. App. 1995) ........................................................7

*Laster v. State,* 275 S.W.3d 512 (Tex. Crim. App. 2009) ........................................................5

*Malik v. State,* 953 S.W.2d 234 (Tex. Crim. App. 1997) ........................................................6

*McGee v. State,* 105 S.W.3d 609 (Tex. Crim. App. 2003) ........................................................7

*Menefield v. State,* 363 S.W.3d 591 (Tex. Crim. App. 2012) ........................................................11

*Palacios v. State,* 2014 WL 3771870 (Tex. App.—Corpus Christi 2014) ........................................................7

*State v. Edmond,* 933 S.W.2d 120 (Tex. Crim. App. 1996) ........................................................7

*Strickland v. Washington,* 466 U.S. 668 (1984) ........................................................10-11

*Williams v. State,* 235 S.W.3d 742 (Tex. Crim. App. 2007) ........................................................5

## Statutes

*Tex. Trans. Code Ann.* § 545.156 ........................................................9

NO. PD-0035-15

# In The Court of Criminal Appeals

DANIEL DIAZ, APPELLANT

VERSUS

THE STATE OF TEXAS, APPELLEE

On Appeal from the 253rd Judicial District Court
Liberty County, Texas
Trial Court Cause No. CR-29411
And
The Court of Appeals for the Ninth Judicial District of Texas
Beaumont, Texas
No. 09-13-00104-CR

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

**Comes Now, Daniel Diaz**, Petitioner, in the above styled and numbered cause and respectfully urges this Court to grant discretionary review of the above named cause, pursuant to the rules of appellate procedures.

### STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests oral argument. *This case presents the important issue of whether the lower court incorrectly ruled that the evidence was sufficient to maintain a conviction for official oppression when it is undisputed from the record that probable cause existed for the detention.* All of the issues presented require

1

discussion of the facts, and are issues that require a look at the correct application of the law to the facts in this case. Oral argument would be helpful to the Court and to the parties because the issues in this case are fact-intensive and oral argument would allow the parties to respond to any concerns or questions of this Court.

## STATEMENT OF THE CASE

Appellant was charged with official oppression in violation of Texas Penal Code § 39.03(a)(1) in Liberty County, Texas. On February 28, 2013, he was convicted subsequent to a trial by jury, and sentenced to the maximum of one year in the Liberty County Jail. The Court of Appeals for the Ninth Judicial District of Texas affirmed his conviction, holding that the evidence was sufficient to sustain a conviction and that Appellant was not denied his 6th amendment right to effective representation.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals for the Ninth Judicial District of Texas affirmed the trial court's judgment on October 22, 2014 in an unpublished opinion. *Diaz v. State,* Appellate Number 09-13-00104-CR. A motion for rehearing was filed on November 21, 2014. This motion was overruled by the Court of Appeals on December 10, 2014. This petition for discretionary review is timely if filed by February 9, 2015. See Tex. R. App. P. 68.2(a), (c).[1]

---

[1] A Motion to Extend has been filed with this Petition for Discretionary Review. That Motion is requesting an additional two (2) days to file the Petition for Discretionary Review.

## STATEMENT OF FACTS

Daniel Diaz ("Mr. Diaz") worked for Texas Parks and Wildlife of Texas as an acting game warden. RR6-7.[2] As a peace officer, Mr. Diaz was responsible for enforcing all of the laws in the State of Texas including those relating to Texas fish and game. RR4-27.

Throughout his time as a game warden, Mr. Diaz had come into contact with many people in Liberty County, Texas. One person that he had contacted on more than one occasion was James David McCormick ("Mr. McCormick"), the complaining witness in this case. *See* RR2, RR3-6. As a result of these contacts, Mr. McCormick had filed official complaints against Mr. Diaz for various allegations of harassment while Mr. Diaz was acting in his capacity as a game warden. *See* RR2. These complaints against Mr. Diaz took place prior to 2011. Mr. McCormick had also been charged with assaulting Mr. Diaz in 2006 after an altercation at Mr. Diaz's home. RR3-12-13.

On the morning of November 13, 2011, Mr. Diaz was scheduled to be on patrol as a game warden for Texas Parks and Wildlife. Mr. Diaz got into his state issued game warden vehicle at around 6:20 that morning. S11.[3] As he sat in his driveway, Mr. Diaz observed a Ford F-350 truck coming down his street with no head lights on. S11. Further, Mr. Diaz noted that the car seemed to be traveling in

---

[2] RR will refer to the Reporter's Record in the record on appeal. The number following the RR will refer to the volume number, and the number after the dash refers to the page number within that volume. For example, RR6-7 refers to Volume 6 of the Reporter's Record at page 7.

[3] S will refer to State's Exhibits in the trial. The number after the S will refer to the exhibit number. S11 is state's exhibit 11.

3

clear excess of the 30 MPH posted speed limit for his neighborhood. S11. The Ford F-350 was being driven by Mr. McCormick.

Mr. Diaz pulled out of his driveway and began to follow Mr. McCormick. RR3-180. Shortly thereafter, Mr. Diaz turned on his emergency lights in an attempt to pull the vehicle over, and talk to Mr. McCormick. RR3-180. Mr. McCormick failed to respond to Mr. Diaz's emergency lights. RR3-180-187. Instead of pulling over, Mr. McCormick called 911 for advice, noting that he was concerned about Mr. Diaz's intentions in pulling him over that morning. *Id.* After close to a mile, Mr. McCormick decided to submit to Mr. Diaz and pulled his car over to the side of Minglewood road outside of Mr. Diaz's neighborhood. RR3-209.

Mr. Diaz asked Mr. McCormick for his license and proof of insurance. RR3-211. The two men had a few words back and forth, and Mr. McCormick was placed in handcuffs for officer safety. RR3-215-217. Shortly after Mr. McCormick was placed in handcuffs, two officers with the City of Liberty Police Department arrived on the scene. RR3-221. Mr. Diaz and the two officers discussed the matter, and Mr. Diaz decided that he would let Mr. McCormick go with a verbal warning. S10.

Mr. McCormick filed an official complaint with the internal affairs division of Texas Parks and Wildlife in Austin, Texas. RR4-55. After an investigation, the Liberty County District Attorney's Office accepted charges of Official Oppression against Mr. Diaz for his actions on November 13, 2011. RR4-112.

4

## GROUNDS FOR REVIEW

1. DID THE COURT OF APPEALS RULE INCORRECTLY WHEN THEY FOUND THAT THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE CONVICTION?

2. DID THE COURT OF APPEALS RULE INCORRECTLY WHEN THEY FOUND THAT MR. DIAZ WAS PROVIDED EFFECTIVE REPRESENTATION UNDER *STRICKLAND* AND THE 6TH AMENDMENT OF THE UNITED STATES CONSTITUTION?

## ARGUMENT

1. The 9th Court of Appeals ruled incorrectly when they found that the evidence was sufficient to support a conviction in light of the undisputed testimony that Mr. Diaz had probable cause that Mr. McCormick had violated Texas Transportation Code, Title 7 Subchapter C § 545.156 prior to his detention.

*A. The Rule of Law*

In reviewing the evidence for sufficiency, the court must consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Brooks v. State*, 323 S.W.3d 893, 898 (Tex. Crim. App. 2010). Evidence can be held to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 n. 11; *see also Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

5

The sufficiency-of-the-evidence standard allocates to the fact-finder the responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). There is a presumption that the fact-finder resolved any conflicts in the evidence in favor of the verdict and review of legal sufficiency defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326.

Legal sufficiency in a case is measured against the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or necessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* A hypothetically correct jury charge would not simply quote from the controlling statute. *Gollihar v. State*, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001). Its scope is limited by "the statutory elements of the offense … as modified by the charging instrument." *Fuller v. State*, 73 S.W.3d 250, 254 (Tex. Crim. App. 2002) (Keller, P.J., concurring); *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

B. *Hypothetically Correct Jury Charge*

Under Texas Penal Code § 39.03 (a)(1), the State has to prove that Mr. Diaz, while acting under color of his office, intentionally subjected the

6

complainant to a detention that he knew was criminal, tortious, or both. *Palacios v. State,* 2014 WL 3771870 (Tex. App.—Corpus Christi 2014). In order for a defendant to know that the detention is unlawful under the official oppression statute, the detention must be in fact, unlawful. *State v. Edmond,* 933 S.W.2d 120, 127 (Tex. Crim. App. 1996). Otherwise a defendant's 'mistake of law' as to the illegality of his own act would create liability where none before existed. *Id.*

A detention under the 4th amendment does not take place until 1) the officer makes a showing of his authority and 2) there is a submission to that authority. *Johnson v. State,* 912 S.W.3d 227, 234 (Tex. Crim. App. 1995). A traffic stop is a detention once the person submits to the officer's authority by stopping his vehicle. *Id.* A peace officer may lawfully detain a motorist who commits a traffic violation when the officer has probable cause to believe a traffic violation has occurred. *Garcia v. State,* 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). Probable cause exists where police have reasonably trustworthy information sufficient to warrant a reasonable person to believe that a particular person has committed or is committing an offense. *McGee v. State,* 105 S.W.3d 609, 614 (Tex. Crim. App. 2003). The test for probable cause is objective and does not take into account the subjective thoughts or motives of the officer. *Amador v. State,* 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Further, a peace officer may make a warrantless arrest of any person who commits a traffic violation in his presence. *Horton v. State,* 4187 LEXIS 1, 7-8 (Tex. App.—Houston [14th Dist.] 2010).

C. *Argument*

7

The facts in this case are such that no reasonable juror could have found the element of an unlawful detention beyond a reasonable doubt. Given the facts in this case, there are three different sets of facts which could have given Mr. Diaz the requisite probable cause to lawfully detain Mr. McCormick:

1. Mr. Diaz's statement that Mr. McCormick's lights were off while traveling through his neighborhood before the sun rose. S11.

2. Mr. Diaz's statement that Mr. McCormick appeared to be traveling well over the 30 MPH speed limit posted in his neighborhood. S11.

3. The undisputed fact that Mr. McCormick failed to pull to the side of the road and stop when confronted with an emergency vehicle. S11, RR3-180-187.

The Court of Appeals was correct in their analysis that the first two sets of facts were not strong enough for a successful challenge to the sufficiency of the evidence under *Jackson*. The first reasons for probable cause detailed above, regarding the speed of Mr. McCormick and whether his lights were on, were heavily disputed in the record on appeal. Testimony was delivered by Mr. McCormick that he was traveling 28 MPH when he saw Mr. Diaz and his lights were "on" when he passed Mr. Diaz's house. RR3-178, RR3-176. The jury weighs the credibility of all of the witnesses, and they were within their power to choose to believe Mr. McCormick during trial. For that reason, a reasonable juror could have found the element of an unlawful detention beyond a reasonable doubt if they were given just the first two sets of facts.

8

However, the objective standard set out under our 4th amendment jurisprudence only requires that the facts of the case show one set of facts that provide probable cause for a lawful detention. In other words, the Court of Appeals for the Ninth Judicial District needed to view the merits of the third ground for probable cause standing on its own without referring to other facts. Mr. Diaz need not prove he had probable cause that three violations occurred in order to show it was a lawful detention. If the evidence shows an undisputed set of facts that would provide probable cause for the traffic stop then the detention is lawful without any need to defer to the jury's province of weighing the witness's credibility.

In this case, it is undisputed that Mr. McCormick violated Texas Transportation Code, Title 7 Subtitle C § 545.156 – Vehicle Approached by Authorized Emergency Vehicle. This section of the Transportation Code requires that on the immediate approach of an authorized emergency vehicle using audible and visual signals, a driver shall 1) yield the right-of-way; 2) immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the roadway clear of any intersection; and (3) stop and remain standing until the authorized emergency vehicle has passed.

Under any version of the facts that the jury chose to believe, Mr. McCormick violated this statute when he 1) saw Mr. Diaz behind him with his emergency lights activated and sirens audible, 2) failed to yield the right-of-way, and 3) continued driving forward instead of stopping and remaining still until Mr.

9

Diaz had an opportunity to pass. A view of Mr. McCormick's or Mr. Diaz's statements in the record on appeal will establish these baseline facts to support a lawful detention. There is no difference in their testimonies. S11, RR3-180-187. Further, the other evidence in the case presented by the State corroborates their testimonies that Mr. McCormick did not pull over when confronted with an emergency vehicle. *See* RR. These undisputed facts provided Mr. Diaz the probable cause necessary to effectuate a lawful traffic stop (detention) on Mr. McCormick. His subjective intent or past dealings with Mr. McCormick are irrelevant to the analysis of whether the detention was in fact unlawful. With conclusive evidence that Mr. McCormick violated a traffic law in the presence of Mr. Diaz, the evidence at trial was insufficient to support a reasonable juror in finding that the element of an unlawful detention was met. The Court of Appeals for the Ninth Judicial District of Texas made an incorrect application of the law to the facts in this case when they found the evidence sufficient to support the conviction for Official Oppression on direct appeal.

2. **The Court of Appeals ruled incorrectly when they found that Mr. Diaz's Trial Counsel was not ineffective under *Strickland* and the 6th amendment of the United States Constitution.**

A. *Rule of Law*

To prevail on a claim for ineffective assistance of counsel, an appellant must prove two elements by the preponderance of the evidence: 1) trial counsel's performance was deficient; and 2) harm resulted from that deficiency sufficient to undermine the confidence in the outcome of the trial. *Strickland v. Washington,*

10

466 U.S. 668, 687, 694 (1984); *Ex Parte LaHood,* 401 S.W.3d 45, 49-50 (Tex. Crim. App. 2013). A claim for ineffective assistance of counsel must be firmly rooted in the record such that the record affirmatively demonstrates the meritorious nature of the claim. *Menefield v. State,* 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). When trial counsel fails to object to questions or testimony during trial, the Appellant must show that the trial court judge would have committed error by overruling those objections in order to establish deficient performance.

B.   *Deficient Performance from Trial Counsel*

   a.   *Texas Rule of Evidence 404(b)*

The State in this case must prove beyond a reasonable doubt that Mr. Diaz knew that the detention of Mr. McCormick was unlawful. In order to meet this element, the State brought in six separate instances of "run-ins" between Mr. Diaz and Mr. McCormick in the guilt innocence phase of trial. These instances involved: 1) a 2004 incident when Mr. Diaz advised Mr. McCormick to not drive his four wheeler in the neighborhood bayou, 2) a 2006 incident where Mr. Diaz gave Mr. McCormick a verbal warning for throwing fish heads over the neighbor's fence, 3) a 2006 incident where Mr. McCormick went to Mr. Diaz's home and an altercation broke out resulting in assault charges against Mr. McCormick, 4) an incident around 2010 where Mr. Diaz tried to block Mr. McCormick's path down a street in their neighborhood with his car, 5) an incident where Mr. Diaz flashed his emergency lights behind Mr. McCormick on Highway

11

146, and 6) an incident where Mr. Diaz followed Mr. McCormick down Minglewood outside of their neighborhood for a short time. RR3-187-207.

Trial Counsel in this case argued the inadmissibility of these acts in his motion in limine prior to trial. *See* RR2. Trial Counsel argued that these instances were improper extraneous evidence as the standard for an unlawful stop was objective and not subjective. *See* RR2, RR3-43. When the Trial Court denied his motion in limine, Trial Counsel asked for a running objection on that ground. RR3-43. This was the last time that Trial Counsel objected to the admission of the past incident testimony.

At no point in the trial did Trial Counsel object to the admission of this line of testimony as it came into evidence before the jury. Trial Counsel understood the value of the testimony enough to have a hearing on a motion in limine prior to trial, but nonetheless, decided that objecting to the admission of the testimony to preserve error and provide the jury with limiting instructions was unneeded.

If Trial Counsel had objected to the admission of these incidents into the record, the Trial Court would have erred if they admitted the evidence without a limiting instruction in line with Texas Rule of Evidence 404(b). These past "bad acts" or dealings with Mr. McCormick could not be used for conformity purposes, but rather, may only be used by the State to go towards Mr. Diaz's knowledge of the unlawfulness of the detention. It is incumbent on the Trial Court to provide a limiting instruction on that matter when prompted by Trial Counsel. The Trial

12

Court thus would have erred by allowing the evidence to come in without a limiting instruction that it could only go towards a proper purpose. The Trial Court did not make those limiting instructions in this case because Trial Counsel failed to object upon the submission of these pieces of testimony before the jury. RR3-187-207.

There is no trial strategy that could justify Trial Counsel's failure to object in this case. This evidence was the center piece of the State's case, and allowing the jury to hear this evidence without an appropriate limiting instruction serves no purpose other than to harm Mr. Diaz. Trial Counsel's inability to object to these key pieces of evidence in the trial was deficient, and no competent attorney would have failed to make these appropriate objections.

C.    *Harm Resulted from the Deficiency*

The State's case from start to finish rested on the prior relationship between Mr. Diaz and Mr. McCormick. The State spent a large portion of their case-in-chief building up the prior relationships between Mr. Diaz and Mr. McCormick. *See* RRs. When arguing the case in closing argument the State added that Mr. McCormick wouldn't lie because all he wanted was to "stop the harassment." *See* RR3, 4, 5-52. In order to meet the elements of official oppression, the State needed more than controverted testimony about the validity of the detention. They needed to use the prior encounters between the two men to show that this case was outside the realm of appropriate police work, and thus, Mr. Diaz knew that his treatment of Mr. McCormick was unlawful. It is hard to imagine a scenario where

13

the State obtains a conviction under these facts without the prior history between Mr. McCormick and Mr. Diaz.

The value of the prior incident testimony cannot be overstated, and the confidence in this trial was undermined by Trial Counsel's inability to appropriately object to these incidents as they came into evidence. Without the proper limiting instructions, the jury was free to use the evidence as they deemed fit throughout the trial. It was crucial that the prior incident testimony be handled competently to insure that Mr. Diaz received a fair trial. In this case, Trial Counsel was entirely incompetent in this area, and harm resulted from this deficiency. The Court of Appeals for the Ninth Judicial District of Texas ruled incorrectly when they found that Mr. Diaz's trial counsel was not ineffective under the *Strickland* standard and the 6th amendment of the United States Constitution.

## PRAYER FOR RELIEF

For the reasons herein alleged, Petitioner respectfully requests this Court grant discretionary review of the lower court's opinion and grant oral argument.

Respectfully submitted,

WENDELL A. ODOM, JR.
State Bar No. 15208500
440 Louisiana Street, Suite 200
Houston, Texas 77002
(713) 223-5575
(713) 224-2815 fax

14

## CERTIFICATE OF COMPLIANCE WITH TRAP 9.4

I hereby certify that this Petition for Discretionary Review complies with Texas Rule of Appellate Procedure 9.4 in that it is written in 14 point font, Times New Roman, and contains 3,539 words.

WENDELL ODOM, JR.


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Petition for Discretionary Review was served on the Assistant Criminal District Attorney and the State Attorney by electronic transmission on February 12, 2015.

WENDELL ODOM, JR.

# APPENDIX

In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00104-CR
_____

DANIEL DIAZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 253rd District Court
Liberty County, Texas
Trial Cause No. CR29411

**MEMORANDUM OPINION**

Appellant Daniel Diaz was indicted for official oppression under section 39.03 of the Texas Penal Code. *See* Tex. Penal Code Ann. § 39.03 (West Supp. 2014).[1] The indictment alleged that on or about November 13, 2011, Diaz "intentionally subject[ed] James David McCormick to detention that [Diaz] knew was unlawful, and [Diaz] was then and there acting under color of his employment

_____

[1]Because the amendments do not affect this case, we cite to the current version of the statutes.

1

as a public servant, namely, Game Warden." A jury found Diaz guilty and the trial court sentenced Diaz to one year confinement in the Liberty County Jail and assessed a $4,000 fine. Diaz appeals.

On appeal, Diaz argues that (1) the evidence is legally and factually insufficient to sustain the jury's verdict; (2) the trial court abused its discretion by admitting irrelevant and prejudicial evidence from a series of alleged extraneous acts in violation of Rules 401, 403, and 404(b) of the Texas Rules of Evidence; (3) he was "denied his [c]onstitutionally protected and guaranteed right to effective assistance of counsel[;]" and (4) that if the decision of the trial court is upheld by this Court, "it will create a level of uncertainty that will have a chilling effect on every traffic stop conducted by law enforcement officers within the State of Texas." We overrule his issues and affirm the judgment.

## Guilt/Innocence Evidence

The testimony at trial indicated that Diaz and McCormick had a "prior history" that preceded the incident of November 13, 2011. In 2006, Diaz confronted McCormick about some "fish heads" McCormick allegedly threw over the fence and into his neighbor's pasture. Diaz drove up in his "game warden truck" while McCormick was throwing out the fish and asked McCormick why he was throwing fish heads onto the neighbor's property. McCormick told him "I

2

always throw them back here." Diaz asked to see McCormick's fishing license and continued to question McCormick. Based upon Diaz's tone of voice, McCormick called the Liberty Police Department and asked them to send an officer to the scene. McCormick testified that as soon as Diaz noticed the Liberty police officer pulling into McCormick's driveway, Diaz "handed [McCormick his] fishing license and said I'm going to give you a warning this time. Don't throw fish heads over here no more unless you get permission from [the neighbor]." A day or two later, and after he obtained permission from the neighbor, McCormick drove over to Diaz's home to let him know that the neighbor had given McCormick permission to throw the fish heads over onto her property. According to McCormick, Diaz then told McCormick he knew that McCormick had "called the law" on him and he stated to McCormick, "you better not ever call the law on me again and you better watch your back." McCormick testified he told Diaz he was not there to argue, and Diaz told McCormick that he was arresting him and "[he] was going to jail" for trespassing. When McCormick proceeded to walk to his truck, Diaz grabbed McCormick's wrist and held it up in the air and began screaming at McCormick telling him he was going to jail. McCormick went to jail and was charged with "assault" on Diaz. The assault case went to trial in 2010, and the jury found McCormick not guilty.

3

McCormick testified that while McCormick was waiting to go to trial on the 2006 assault charge, Diaz followed him on more than one occasion. One evening Diaz blocked the path of McCormick's vehicle with his personal truck and when McCormick drove around Diaz to pull into McCormick's driveway, Diaz followed him and "stayed parked" in front of McCormick's house for fifteen minutes. Right after the jury found McCormick not guilty on the 2006 assault charge, Diaz again followed McCormick, and Diaz flashed his lights at McCormick but did not stop him. McCormick notified the police department that Diaz was "harassing" him but he did not make a formal report. McCormick indicated at trial that the police department personnel told him there was "pretty much nothing they [could] do." McCormick testified that on another occasion, prior to being stopped by Diaz in November 2011, while McCormick was driving on Highway 146, Diaz followed McCormick. McCormick also told the jury that prior to November 2011, he spoke to law enforcement about getting a restraining order against Diaz and they told him he needed to hire an attorney.

According to McCormick, on November 13, 2011, around 6:20 a.m., he was driving his vehicle on Minglewood (a/k/a Mizell) Road, on his way to work, and he drove past the driveway to Diaz's home. McCormick had to drive past Diaz's home to exit his subdivision. McCormick testified he had his headlights on because

4

it was still dark outside. He stated that he knew he was not going over 30 m.p.h., "[b]ecause I always make sure I'm going under 30 when I pass . . . Mr. Diaz's house[,] . . . to try to avoid any trouble that I might have as I pass by his house." As he approached Diaz's driveway, he noticed Diaz's game warden truck parked in the driveway. Diaz's vehicle had its headlights on and as McCormick approached Diaz's driveway, Diaz turned his game warden truck "red and blue lights on." After McCormick's vehicle got into the first curve past Diaz's driveway, McCormick then noticed that Diaz pulled out onto the roadway behind McCormick. McCormick testified that he was "afraid for [his] safety" because of their "past history" and that is why he did not immediately pull over. McCormick stated,

> I yielded for [Diaz] to go around because I thought maybe that he had a call that he was going to, so I yielded. . . . I also yielded for [Diaz] to go around while I was on [the] phone with 911, but [Diaz] stayed behind me. Then [Diaz] started getting close to my vehicle, so at that point, I knew [Diaz] must have been pulling me over.

McCormick testified that "[t]here was no other cars on the road, so at that point I called 911 because I wasn't really sure what to do. I was afraid for my safety at that time." McCormick pulled over and stopped while he was talking to the 911 operator.

5

After stopping, Diaz told McCormick to get out of his truck and McCormick complied. Diaz asked to see McCormick's driver's license and proof of insurance. Diaz told McCormick to put his driver's license on the hood of Diaz's truck, and McCormick did what he asked. Then Diaz told McCormick to put his hands behind his back and Diaz handcuffed McCormick, and told him he was arresting him for "speeding." McCormick testified that Diaz also "got right in [McCormick's] face" and asked McCormick, "[D]id you get satisfaction out of us going to court[?]" McCormick replied, "[D]amn right. I enjoyed every minute of it, especially when you got up on the stand and lied . . . you made a fool out of yourself." McCormick told Diaz that he had called 911. Diaz then called someone and said "I have James McCormick pulled over and I have him handcuffed for my protection." Diaz never had his citation book out or with him, and none of the officers issued McCormick a citation for anything.

The Liberty Police officers responded to a call to assist. When they arrived, they took Diaz over in front of their vehicle and they had a discussion with Diaz. McCormick testified that the male officer came back and told McCormick "Mr. Diaz [is] going to set [you] free," and the officer told Diaz to take the cuffs off of McCormick. Before McCormick left to go to work, Diaz told McCormick he was "going to get a warrant" to arrest McCormick for evading arrest. McCormick

6

turned to the male officer and said, "[C]an he do that?" McCormick told the jury the officer looked at McCormick "and winked" and told McCormick to contact an attorney.

Officer Cedric McDuffie, a Deputy with the Liberty County Constable's Office and formerly a police officer with the Liberty Police Department, testified that he and his partner, Officer Elizabeth Polasek, responded to a call on November 13, 2011, to assist at the scene of a traffic stop. McDuffie had over twenty years in law enforcement at the time of trial. McDuffie testified that when they arrived McCormick was in handcuffs standing on the side of the road over by the Game Warden's truck. McDuffie got out of his vehicle and walked over to speak with Diaz. According to McDuffie, Diaz indicated that McCormick was speeding and Diaz stated he had observed McCormick driving by Diaz's residence at "maybe about 30 miles per hour." Diaz also said "possibly" McCormick did not have his headlights on. At that time, the subject of evading arrest never came up. Officer McDuffie testified that the City of Liberty requires a radar to determine speed, and he would never recommend that an officer try to enforce a traffic law for speeding without getting a radar and special training to enforce speeding laws.[2] At one point

---

[2]McDuffie explained that the Liberty Police use radar to document the speed of a vehicle, but indicated that you can also use "[r]adar pacing and clocking[.]" According to McDuffie, radar pacing is where the officer follows behind someone

7

at the scene, Diaz admitted to McDuffie that he had no reason to give Mr. McCormick a ticket. At trial, McDuffie acknowledged on direct examination that it was "fair to say that [Diaz] had no reason to give [McCormick] a ticket[.]"

The video captured by the Liberty Police Department dash camera was also introduced into evidence at trial and played for the jury without any objection from Diaz. The video (with audio) depicts the arrival of the Liberty police officers to the scene, and the conversations of Diaz with the officers about the situation. On the video, Diaz can be heard making the following statement, "No, I don't have a reason to give him a ticket . . . I really wasn't going to give him a ticket." Diaz can also be heard telling the Liberty officers that "McCormick got out of . . . an assault on me . . .," and "he calls 9-1-1."

The State introduced the audio recording and a transcript of the 911 call made by McCormick, and there were also records of two calls made by Diaz on the non-emergency line. Dispatcher Mary Jackson testified that McCormick's 911 call came in at 6:27 a.m., and it was the first call she received. Later, she also received

---

and determines their speed from the speed on the officer's speedometer. And, "clocking" is timing a vehicle from one point to another and then using the exact distance to extrapolate a speed. Officer McDuffie said he "never felt comfortable" using clocking and that only the State of California uses it. McDuffie testified that, while you can sometimes just "eyeball" a car to determine if it is speeding, it is more difficult and deceptive, especially around a curve.

8

two calls from Diaz on the non-emergency line. The time lapse between the start of McCormick's 911 call and then the beginning of Diaz's first call was about two minutes. As McCormick hung up with the 911 dispatcher, Diaz called the dispatcher in his first call and then followed up with another call several minutes later.

Rod Ousley, a Captain with Texas Parks and Wildlife, and Diaz's supervisor at the time of the 2011 incident, testified that Diaz came to his office the day after Diaz stopped McCormick in November of 2011. Ousley explained to the jury that Diaz brought in Diaz's handwritten statement about the stop and informed Ousley that Ousley probably needed to notify internal affairs because he thought the stop could potentially generate a complaint. Diaz explained in his statement that he observed "a black truck with no lights, headlights or parking lights" that "appear[ed] to be exceeding the posted speed limit" and that he recognized that the truck belonged to McCormick ,who he had "had a run-in with in the past." Ousley testified he notified Diaz on January 9, 2012, that the Internal Affairs investigation resulted in a letter of intent to take corrective action. The next day, Diaz "put in" for retirement, and therefore no corrective action was taken.

McCormick spoke with an attorney and decided to file a complaint with Texas Parks and Wildlife against Diaz. Texas Parks and Wildlife investigated the

9

matter and referred it to Internal Affairs who then sent it to the District Attorney. The transcript of Diaz's testimony before the grand jury was admitted into evidence, as well as Diaz's handwritten statement about the incident. According to the transcript of Diaz's grand jury testimony, Diaz testified that before sunrise on November 13, 2011, he was leaving in his patrol vehicle and saw a truck "50 feet 100 feet something like that" away with no lights on. He recognized the truck belonged to McCormick as the truck went by, and he pulls behind him and "turns on his red and blue lights cause I'm going to stop him, he had no lights and I allege he's speeding." He saw McCormick apply his brakes but not pull over. Diaz contacted the police department to inform them the vehicle would not pull over, and the dispatcher said McCormick was on the 911 line and was reporting that Diaz was harassing him. Diaz asked for assistance. According to Diaz, McCormick pulled over, and when he got out of his truck "he didn't come out very friendly he said I called the real police and you're in trouble[.]" Diaz made McCormick get behind his truck and cuffed him because McCormick was talking "in an elevated voice" and Diaz believed there was going to be "another scuffle" and he "didn't want to take any chances[.]" The grand jury indicted Diaz.

Irma Sanchez, custodian of records for Texas Parks and Wildlife, testified that she performed a search for traffic citations and warnings issued by Diaz from

10

2008 through 2011. According to Sanchez, her search revealed that during that time period Diaz did not write any warnings or citations for traffic offenses. Dorothy Drennan, City of Liberty Municipal Court Clerk, testified that she performed a search of the traffic citation issued by Diaz going back to 1993. According to Drennan, Diaz had only issued one traffic citation since 1993, and that was for cutting through a parking lot at an intersection.

## Punishment Evidence

At the punishment phase, Special Ranger Jimmy Belt with the Texas Department of Public Safety, testified he had several "run-ins" with Diaz dating back to 1986 wherein Diaz tried to intimidate him. On at least one occasion, Belt filed a complaint with Texas Parks and Wildlife regarding Diaz. Belt testified that Diaz has a reputation for bullying members of the public and members of law enforcement.

John Feist, a former Chambers County Game Warden, also testified at the punishment phase. Feist said he has known Diaz for "[p]robably 25 years" and that Diaz has a reputation for being unprofessional. Similarly, Highway Patrol Sergeant Steve Holloway, formerly a Liberty County DPS officer from 1989 to 1998, stated that he had witnessed Diaz threaten another law enforcement officer. Gary Cain, a retired game warden who had previously worked in Hardin County, acknowledged

11

that he had people complain to him about Diaz "using his badge to bully the public[,]" and that he heard complaints about Diaz from private citizens as well as law enforcement. Captain Ousley, Diaz's former supervisor, testified about an incident in 2011 where Diaz violated Texas Parks and Wildlife policies when he discharged a weapon "to get [a] guy's attention." In Captain Ousley's opinion, Diaz engaged in vindictiveness as a game warden. Private citizens also testified about confrontations they had with Diaz.

In contrast, Game Warden Vu Nguyen, who has known Diaz for eight years and worked with Diaz on "[m]any occasions[,]" testified that Diaz's behavior was "[a]lways professional and courteous." Nine other character witnesses testified that they have known Diaz for a long time and all of them had good experiences dealing with Diaz while he was working in his capacity as a game warden. Diaz's wife testified that they have been married twenty-two years. She testified that Diaz "is a good man" and a Vietnam veteran.

## Legal and Factual Insufficiency Challenge

In his first issue, Diaz contends that the evidence is legally and factually insufficient to sustain the jury's verdict. We construe appellant's first point of error as a challenge to the legal sufficiency of the evidence. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (there is no longer any meaningful

12

distinction between a legal and factual sufficiency standard when reviewing sufficiency of evidence to sustain a criminal conviction).

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under the single sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Brooks*, 323 S.W.3d at 912. Under that standard, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. "It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

We must defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. We also allow for the jury to make "reasonable inferences" from the testimony or evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see also* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). When the record supports

13

conflicting inferences, we presume that the jury "resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing to *Jackson*, 443 U.S. at 326). Sufficiency of the evidence should be measured by the elements of the offense as alleged in the indictment. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

On appeal, Diaz contends that the evidence is insufficient because it "did not prove that [Diaz] acted knowingly, intentionally, and unlawfully in his detention of James David McCormick." Diaz argues that "a purely objective standard applies to whether the officer had a valid reason for the stop [or] detention and not a subjective standard" and Diaz "had reasonable suspicion to conduct and did conduct a valid traffic stop and legally detained James David McCormick[.]" Further, Diaz argues that if Diaz had "any legal reason to detain McCormick" then Diaz "could not be guilty of official oppression in relation to detaining McCormick[,] as a matter of law."

To convict Diaz of official oppression as alleged in this case, the State had to prove that Diaz, a game warden and public servant, while acting under color of his office or employment, intentionally subjected McCormick to a "detention" that

14

Diaz knew was "unlawful." *See* Tex. Penal Code Ann. § 39.03(a)(1); *see also State v. Edmond*, 933 S.W.2d 120, 127 (Tex. Crim. App. 1996) (explaining that when charged with official oppression by mistreatment, the defendant must have known that the mistreatment alleged in the indictment was in fact unlawful in that it was either criminal or tortious). The Penal Code defines "[u]nlawful" as "criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege." Tex. Penal Code Ann. § 1.07(a)(48) (West Supp. 2014). Therefore, the State had to prove that Diaz, while acting under color of his office, intentionally subjected McCormick to a detention he knew was criminal, tortious, or both. *See id.*, § 39.03(a)(1).

A temporary detention such as a traffic stop is generally justified when the officer has reasonable suspicion to believe that an individual is violating the law. *See Terry v. Ohio*, 392 U.S. 1, 29 (1968); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). "Reasonable suspicion" exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a person has engaged, is engaging, or soon will be engaging in criminal activity. *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013). This objective standard disregards the officer's subjective intent and looks solely at whether an objective basis for the detention exists. *Ford,*

15

158 S.W.3d at 492. A reasonable-suspicion determination is made by considering the totality of the circumstances at the time of the detention, considering common sense judgments and inferences about human behavior. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

Based on the evidence in the record, the jury could reasonably have determined that Diaz intentionally subjected McCormick to a detention he knew was criminal, tortious, or both. In particular, evidence in the record indicates that Diaz and McCormick had a "prior history" of confrontations, that McCormick was being harassed by Diaz, that McCormick had made several calls to the Liberty Police Department about Diaz following him, stopping him, and watching him prior to this incident, that Diaz admitted to the Liberty Police officers who were dispatched to the scene that Diaz had no "reason to give Mr. McCormick a ticket[,]" that Diaz did not know the speed of McCormick's vehicle, and that Diaz was upset at McCormick for calling 911 and that he felt like McCormick "got out of" the prior assault charges.

Even though Diaz and his expert witness testified that Diaz had reasonable suspicion to stop McCormick for speeding or for not having his headlights on, or even possibly failing to yield to an officer, the jury could have reasonably weighed the credibility of the witnesses and the weight to be given to their testimony, and

16

made "reasonable inferences" from the testimony or evidence. *Williams*, 235 S.W.3d at 750; *see also* Tex. Code Crim. Proc. Ann. art. 38.04. We presume that the jury resolved any conflicts in favor of the verdict and we therefore defer to that determination. *Clayton*, 235 S.W.3d at 778. Reviewing the sufficiency of the evidence submitted at trial in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support the conviction for official oppression as alleged in the indictment. We overrule the first issue.

## Admission of Evidence

Next, Diaz argues that the trial court erred by admitting irrelevant and prejudicial evidence from a series of alleged extraneous acts. Diaz contends "[s]pecifically, the trial court erred in admitting the majority if not all of the testimony of Daniel McCormick, Jimmy Belt, John Feist, Steve Holloway, Gary Cain, Taylor Webb, Henry Dietz, Patsy Dubois, and Rod Ousley, especially testimony involving alleged bad acts or opinion testimony with no basis and relevance to the pending matter[,]" and he was further harmed when the State referenced the "extraneous offenses" in its closing argument. Diaz provides us with no citations to record evidence that would support his arguments as required by Texas Rule of Appellate Procedure 38.1(i), and in our review of the record we found no support for his arguments.

17

Witnesses Belt, Feist, Holloway, Cain, Webb, Dietz, Dubois, and Ousley testified during the punishment phase. Diaz made no objection to their testimony during the punishment phase. He failed to preserve any error on this issue relating to the admission of their testimony.

McCormick testified during the guilt/innocence phase of the trial. To preserve error for appellate review, a party's objection generally must be sufficiently specific so as to "'let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'" *Malone v. State*, 405 S.W.3d 917, 925 (Tex. App.—Beaumont 2013, pet. ref'd) (quoting *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009)). In order to raise a Rule 403 complaint, the objecting party must make a 403 objection separate from a Rule 404(b) objection. *See Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g). Diaz did not specifically make a Rule 403 objection separate from his 404(b) objection, and therefore, has not preserved a Rule 403 complaint on appeal. *See id.*; *see also* Tex. R. App. P. 33.1(a).

Diaz filed a motion in limine to exclude any testimony by McCormick regarding Diaz's extraneous bad acts. The trial court granted the motion as to testimony by any complainants (other than McCormick) during the guilt/innocence

phase of the trial, but denied the motion as to McCormick's testimony during the guilt phase regarding Diaz's extraneous bad acts towards McCormick. Rule 404(b) expressly provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of the defendant in order to show he acted in conformity therewith. Rule 404(b) codifies the common law principle that a defendant should be tried only for the offense for which he is charged and not for being a criminal generally. *Rogers v. State*, 853 S.W.2d 29, 32 n.3 (Tex. Crim. App. 1993); *see also Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008) (explaining that the defendant is generally to be tried only for the offense charged, not for any other crimes). Extraneous offense evidence, however, may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b). The list of examples in Rule 404(b) is nonexhaustive. *See Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The trial court's Rule 404(b) ruling admitting evidence is generally within the zone of reasonable disagreement "if there is evidence supporting that an

extraneous transaction is relevant to a material, non-propensity issue." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

The testimony from McCormick about the prior history and confrontations he had with Diaz was relevant to one or more material issues in the case. McCormick as the complaining witness explained his history with Diaz, the assault charge that was brought against him by Diaz, and the other instances of Diaz harassing him before this incident. Such detail directly related to the intent and motive of Diaz in detaining McCormick, further explained the conduct of the parties on the date in question, established a pattern of conduct on the part of Diaz, and demonstrated intentional and knowing conduct.

To the extent Diaz complains on appeal of the admission of certain testimony during the punishment phase,[3] Diaz did not preserve error because he failed to make any objection. Even if Diaz had preserved error, evidence may be offered during the punishment phase as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant,

---

[3]Diaz complains that the trial court erroneously admitted the "prejudicial" testimony of Diaz's bad acts by "Daniel McCormick, Jimmy Belt, John Feist, Steve Holloway, Gary Cain, Taylor Webb, Henry Dietz, Patsy Dubois, and Rod Ousley[,]" but Diaz fails to give record references regarding the specific testimony of which he complains. We note that, of these witnesses, Ousley testified during both guilt and punishment phases, McCormick testified during the guilt phase only, and the remainder testified only at punishment.

his general reputation, his character, the circumstances of the offense for which he is being tried, and any other evidence of extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant for which he could be held criminally responsible. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2014). The testimony during the punishment phase about which Diaz complains was relevant to sentencing because it was character evidence. *See id.* Therefore, we overrule issue two.

## Ineffective Assistance of Counsel

In his third issue Diaz contends that he was "denied his [c]onstitutionally protected and guaranteed right to effective assistance of counsel." To prevail on a claim of ineffective assistance of counsel, an appellant must prove two elements by a preponderance of the evidence: (1) trial counsel's performance was deficient; and (2) harm resulted from that deficiency sufficient to undermine confidence in the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Ex parte LaHood*, 401 S.W.3d 45, 49-50 (Tex. Crim. App. 2013). An ineffective assistance of counsel claim "must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999)).

21

In evaluating the effectiveness of counsel under the first prong of *Strickland*, we look to the totality of the representation and the particular circumstances of the case. *Thompson*, 9 S.W.3d at 813. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2011).

The Texas Court of Criminal Appeals has explained that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003) (citing *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002)). Direct appeal is usually inadequate to make an ineffectiveness claim because the record is frequently undeveloped in this respect. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Cox*, 389 S.W.3d 817, 819 n.11 (Tex. Crim. App. 2012) (observing that "[a] reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective-assistance claim"). Without evidence of trial counsel's strategy, "an appellate court will assume a strategic motivation and will not conclude that the challenged conduct was deficient unless it was so outrageous no competent attorney would have engaged in it." *Ozuna v. State*, 199 S.W.3d 601, 612 (Tex. App.—Corpus Christi 2006, no

22

pet.) (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). It is not appropriate for an appellate court to simply infer ineffective assistance of counsel. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

Diaz contends that his trial attorney rendered ineffective assistance in both phases of his trial, and that the failure of his attorney to "make a single objection during the punishment phase of the trial and during the guilt/innocence phase of trial, other than the alleged running objections made outside the presence of the jury and which arguably did not preserve error in any form, can in no way be classified as 'trial strategy'." Diaz argues "countless objections" could have been raised during the trial and were not, that Diaz's counsel failed to object to leading questions, inflammatory statements, unfounded evidence and conclusions, and failed to familiarize himself with the proper legal standards. Diaz points to no specific record references, but he argues that the extraneous evidence of prior bad acts as contained in his earlier issue would be a specific example.

Regarding the alleged omissions of his attorney to object to questions or testimony, Diaz has not established the trial court judge would have committed error in overruling the objections if they had been made. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996) (holding that "in order to argue successfully that her trial counsel's failure to object" amounted to ineffective

23

assistance, appellant "must show that the trial judge would have committed error in overruling such an objection"). To the extent Diaz implies that his trial counsel should have called more witnesses in his favor, he has not established that he would have benefited from the testimony of any other unspecified witnesses he argues his counsel should have called to testify. "'[F]ailure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony.'" *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (quoting *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)). Additionally, he must demonstrate that there is a reasonable probability that the witnesses' testimony would have affected the result of the trial. *Id.* We conclude that the record in this case does not affirmatively demonstrate ineffective assistance of counsel. The record is undeveloped and does not adequately reflect the motives behind trial counsel's actions. We cannot simply infer that trial counsel lacked a trial strategy in failing to lodge objections. We therefore overrule this issue.

## Chilling Effect

In his fourth and final issue, Diaz argues that if the decision of the trial court is upheld by this Court, "it will create a level of uncertainty that will have a chilling effect on every traffic stop conducted by law enforcement officers within

24

the State of Texas." Diaz cites no legal authority for his argument. The State argues that the official oppression statute as drafted by the Legislature avoids any "'chilling effect' on Law Enforcement" personnel because it tells officers what they should not do.

As already stated, a temporary detention such as a traffic stop is generally justified when the officer has "reasonable suspicion" to believe that an individual is violating the law. *See Ford*, 158 S.W.3d at 492. "Reasonable suspicion" exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a person has engaged, is engaging, or soon will be engaging in criminal activity. *Abney*, 394 S.W.3d at 548. Our ruling today does not in any way restrict, alter, or amend the "reasonable suspicion" standard as applied by law enforcement personnel in the exercise of a lawful discharge of their duties. This case does not involve a "lawful discharge" of official duties by an officer or public servant in making a traffic stop based upon "reasonable suspicion." Rather, the jury found Diaz guilty of official oppression. Diaz is not charged with the "lawful discharge" of his official duties in conducting a traffic stop, but rather with the "unlawful discharge" of his duties. The jury determined that Diaz engaged in a detention of another person which

25

violated the law and constituted "official oppression." Accordingly, we overrule his issue.

Having overruled all of Diaz's issues, we affirm the judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on August 11, 2014
Opinion Delivered December 10, 2014
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.